William Tharp (ISB 3499)
**GREENER BURKE SHOEMAKER, P.A.**
950 West Bannock Street, Suite 900
Boise, ID 837092
Tel: 208-319-2600
Fax: 208-319-2601
Email: btharp@GreenerLaw.com

Steven L. Rinehart (Admitted Pro Hac Vice)
**RINEHART FETZER SIMONSEN & BOOTH**
50 West Broadway, Suite 1200
Salt Lake City, UT 84101
Tel: 801-328-0266
Mobile: 801-347-5173
Fax: 801-665-1292
Email: steve@mountainwestlaw.com

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| KRAZY COUPON LADY, LLC, an Idaho limited liability company;<br><br>Plaintiff,<br>vs.<br><br>TAMARA IRISH, an individual;<br><br>Defendant. | **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Civil No.: 1:10-CV-539<br><br>Judge Ronald E. Bush |

## I. STATEMENT OF FACTS AND SUMMARY OF THE ARGUMENT

This action for common law trademark infringement and cyberpiracy is really about inflicting revenge on the defendant Tamra Irish ("Defendant" or "Irish") for seeking to enforce her partnership rights in the plaintiff's Krazy Coupon Lady, LLC's ("Plaintiff") online business

i

in a separate state action pending before Idaho's Fourth Judicial District Court.  This action was not brought in good faith.

The Defendant Irish was making use of the common law mark CRAZY COUPON LADY on a blog she hosted in 2008 before inviting Wheeler and Demer to join her in a partnership, along with another friend of Irish's, Katie Givens.  Irish registered the domain underlying this proceeding, <krazycouponlady.com> (the "Disputed Domain"), several months before the Plaintiff to this action even incorporated (a fact which should be dispositive).  Affidavit of Tamra Irish ("Irish Affid."), attached hereto as **Exhibit A**, ¶ 2.  The Defendant's relationship with whom would later become the Plaintiff's members and manager, Heather Wheeler and Joanne Demer ("Wheeler" and "Demer" respectively) was fine initially, but broke down in 2009 after they all worked together for a short period of time marketing coupons on the Internet.  As the business became more profitable, Wheeler and Demer claimed it was theirs and offered to buy Irish and Givens out.  Id. ¶¶ 5 – 7.  When Irish and Givens refused, Wheeler and Demer expelled Irish and Givens from their partnership.  *Id*.

The Defendant Irish responded to the expulsion by filing a state action before the Fourth Judicial District Court of the State of Idaho alleging *inter alia* breach of fiduciary duty, unjust enrichment, and breach of contract against both Wheeler and Demer (Case No. CV-OC-1017076) (the "State Action").  <u>See</u> Pleadings from the State Action (the "State Pleadings') attached as <u>Exhibit D</u> to the Irish Affid.  In response to this action, Demer and Wheeler filed counterclaims in the State Action, but failed to make as counterclaims any of the claims they are now pursuing in this action.  As further argued below, the claims made in the Plaintiff's Amended Complaint in the present case consist entirely of claims that were compulsory in the State Action under both Rule 13(a) of the Federal Rules of Civil Procedure and Rule 13(a) of the

Idaho Rules of Civil Procedure.  Because these claims were not made as counterclaims, they were consequently waived in the State Action.

The Plaintiff nevertheless chose to file its claims in the present action hoping to avoid to preclusionary effect of the rules.  While the Plaintiff will argue that its claims are allowable because the present case was filed in the name of Wheeler and Demer's limited liability company, whereas the State Action involves Wheeler and Demer exclusively, the Plaintiff to this action was not formed at the time the Disputed Domain was registered or the claims made herein arose.  *See* Business Entity Detail Report of the Idaho Secretary of State attached as Exhibit B to the Irish Affid.  Therefore, the Plaintiff must either be a successor-in-interest to Wheeler's and/or Demer's claims made in this case (which is not even alleged, much less shown) in which case the Plaintiff's claim are barred under Rule 13(a), or the Plaintiff must be making the claims directly, in which case the Plaintiff lacks standing to do so as it did not exist at the time the claims arose.

In either case, even assuming *arguendo* that standing are waiver are not factors, the Plaintiff's claims fail as a matter of law.  The Plaintiff has not, and cannot, make any showing of common law trademark rights.  Because the Defendant Irish was using the Mark KRAZY COUPON LADY before the Plaintiff, the Defendant cannot be liable for cyberpiracy under the ACPA (Anticybersquatting Consumer Protection Act) or for common law trademark infringement.  Prior use is an absolute bar to the Plaintiff's claims.

The Plaintiff to this action is at best inexcusably confused; and, at worst, guilty of bad faith.  It is worth pointing out that the Plaintiff hereto sued the Defendant for "registered" trademark infringement in the original Complaint (apparently confused as to the fact that no registered mark existed), and only amended the original Complaint to instead include a "common

law" trademark infringement claim after being informed in writing by Defendant's counsel that the Plaintiff did not have a registered trademark and had made a false representation to the Court.

The Plaintiff's Amended Complaint in this action presents a case of reverse domain name hijacking. The Amended Complaint is deficient and wanting. There exists no legal or factual basis upon which the Plaintiff can sustain the claims in the Amended Complaint, and thus the Defendant should be awarded attorney fees for being forced to engage the Plaintiff in Court with this motion.

## II.   STANDARD OF REVIEW

When considering the Defendant's Motion to Dismiss under 12(b), this Court must accept the factual allegations in the Amended Complaint as true and draw all reasonable inferences from those facts in favor of the Plaintiff. *Seamons v. Snow,* 84 F.3d 1226, 1231-32 (10th Cir. 1996); *Interbrew S.A. v. Edperbrascan Corp.,* 23 F. Supp. 2d 425, 427 (S.D.N.Y. 1998).

### III.    ARGUMENT

A.    **The Plaintiff's Complaint Presents a Text-book Case of Reverse Domain Name Hijacking.**

This case is a perfect example of **reverse domain name hijacking**.[1]  This is the practice whereby a purported trademark owner asserts over-reaching trademark rights in an effort to strip a defendant of a legitimate domain name.  It is a phenomenon that is all too common and follows a known fact pattern: (i) an individual registers a valid domain name in good faith; (ii) a competitor later wants the domain name; and (iii), the competitor then files a lawsuit intending to scare, intimidate, outspend and wrest away the domain name away from the individual.  *See Barcelona.com v. Excelentisimo Ayuntamiento*, 330 F.3d 617 (4th Cir., 2003) (a general discussion of reverse domain name hijacking).

B.    **The Plaintiff Had No Rights in the Disputed Domain when the Defendant Registered It before the Plaintiff Existed or Its Use of the Mark Began.**

As alleged in the Amended Complaint, the Defendant Tamra Irish registered the Disputed Domain on January 30, 2009.  WHOIS Registration Record ("WHOIS Record") attached as Exhibit A to the Irish Affid.  Prior to registering the Disputed Domain, the Defendant had been using this mark CRAZY COUPON LADY in commerce, and had invited the Plaintiff's members to join her in use of the Mark.  Irish Affid. ¶ 2 – 5.  At the time the Defendant registered the Disputed Domain, the Plaintiff did not legally exist apart from its members.  The Plaintiff organized on March 9, 2009.[2]  The Plaintiff had likewise not filed for trademark protection with

---

[1] If a domain-name registrant cybersquats in violation of the Lanham Act, he "hijacks" the domain name from a trademark owner who ordinarily would be expected to have the right to use the domain name involving his trademark. But when a trademark owner overreaches in exercising rights, he "reverse hijacks" the domain name from the domain-name registrant.  Section 1114(2)(D)(v) of the Lanham Act protects domain-name registrants against overreaching trademark owners and is often referred to as the "reverse domain name hijacking" provision. *Barcelona. Com v. Excelentisimo Ayuntamiento*, 330 F.3d 617, 625 n. 1 (4th Cir., 2003).

[2] Consequently, as further argued below, the Plaintiff either lacks standing to assert the claims in the

1

U.S. Patent and Trademark Office (USPTO), which it did not do until May of 2009.  By its own admission, the Plaintiff had not begun to use the mark KRAZY COUPON LADY (the "Mark"), or any other mark, and had not accrued any rights in the Mark.  Even when the Plaintiff did file for trademark protection before the USPTO on May 21, 2009, the Plaintiff filed a 1B "intent-to-use application" in which the Plaintiff swore before the USPTO that it had not yet begun using the Mark in commerce and acknowledged no preexisting rights in the Mark.[3]  *See* Plaintiff's TESS trademark record attached as Exhibit C to the Irish Affid.

Despite swearing it had never used the Mark prior to May 21, 2009 and acknowledging no rights in the before May 21, 2009, the Plaintiff's now claims in the Complaint that the Disputed Domain was registered unlawfully in January of 2009, before Plaintiff applied for trademark rights with the USPTO and before Plaintiff began using the Mark.  The Plaintiff is estoped from making this assertion, and is also barred by Rule 13(a).

### C.    The Plaintiff's Claims Fail as a Matter of Law.

The Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d), is designed to thwart "cybersquatters" who register Internet domain names containing trademarks with no intention of creating a legitimate web site, but instead plan to sell the domain name to the trademark owner or a third party.  Gilson on Trademarks §7A.06, Trademark Cyberpiracy

---

Amended Complaint, or is a successor-in-interest of  claims barred by Rule 13(a).

[3] Plaintiff's trademark application was filed as an "intent-to-use" application. The Lanham Act permits a mark not yet used in commerce to be reserved for later registration by filing an intent-to-use application with the USPTO. But, trademark rights arise out of use - not the filing of an application. *See Creagri, Inc. v. Usana Health Sciences, Inc*., 474 9th (9th Cir. 1996) (use required to obtain trademark rights); *Sengoku Works, Ltd. v. RMC Intern., Ltd*., 96 F.3d 626 (Cir. 2007) (axiomatic in trademark law that rights are not established until actual use of the mark).  Plaintiff's first "intent-to-use" trademark application was filed on May 23, 2003, for the mark SPACE COAST LIVING.  In 2004, Plaintiff filed a statement with the USPTO declaring that Plaintiff's first use of the mark SPACE COAST LIVING was December 1, 2003 - approximately four years after Defendants' registered the Disputed Domain.  *See* Exhibit A. At the time Defendants registered the Disputed Domain, Plaintiff had not adopted any mark, was not using the SPACE COAT LIVING mark, and had acquired absolutely no rights in any in the mark. It is absolutely impossible that Defendants registered the Disputed Domain with any intent to damage or harm Plaintiff's Mark, as required by the ACPA.

and Cybersquatting (Matthew Bender & Co. 2009).

Because the Defendant's Disputed Domain registration pre-dates Plaintiff's trademark use and very existence, the Plaintiff's cybersquatting and trademark claims under the Anticybersquatting Consumer Protection Act (ACPA) and Lanham Act must fail as a matter of law.  The Plaintiff has acknowledged that in order for its cybersquatting claim to succeed, the Plaintiff must demonstrate that its mark was distinctive or famous at the time the domain name was registered.  Amended Complaint ¶ 10.  As shown above, at the time the Disputed Domain was registered, however, the Plaintiff had no trademark rights whatsoever, had sworn before the USPTO is had not yet used the mark, and did not even exist.  Yet, Plaintiff has filed this lawsuit anyway, wrongly demanding the Disputed Domain be transferred.

The plain language of Section 43(d) of the Lanham Act (15 USC §1125(d)), holds a registrant liable if the registrant (i) registers, traffics in, or uses a domain name that a) is identical or confusingly similar to a distinctive mark **which is distinctive at the time of registration of the domain name** or b) is identical or confusingly similar to or dilutive of a famous mark **which is famous at the time of registration of the domain name** and (ii) has a bad faith intent to profit from that trademark, including a personal name, which is protected as a trademark under Section 43 of the Lanham Act.  *See* 15 U.S.C. § 1125(d)(1)(A).  The Plaintiff has not, and cannot, meet any of these standards.

> D.   **The Plaintiff Chose Not to Bring this Action in Arbitration, Where it Would Have Lost Readily.**

It is worth noting that Plaintiff could have brought this dispute in arbitration before an ICANN Authorized Arbitration Forum under the UDRP, such as the WIPO Mediation Center or the National Arbitration Forum (NAF), which together handle about 10,000 of these domain names disputes annually.  Yet, the Plaintiff instead chose to bring an ACPA action in a *state*

*court*.  Arbitration would have quickly resulted in the Plaintiff's demise and the Plaintiff facing a reverse domain name hijacking decision from WIPO or the NAF.  Like US District Courts interpreting the ACPA, arbitration panels interpreting the UDRP have universally held that a domain name registrant of any domain name whose registration predates trademark accrual of another party, is a good-faith registrant of the domain name.  *See Mosaic International, LLC v. PZ -- No Auction*, FA1002001307578 ("The Panel finds that Respondent's predating registration of the disputed domain name negates a finding of bad faith registration and use.")[4]; *See Interep Nat'l Radio Sales, Inc. v. Internet Domain Names, Inc.,* D2000-0174 (WIPO May 26, 2000) (finding no bad faith where the respondent registered the domain prior to the complainant's use of the mark)[5]; *see also Telecom Italia S.p.A. v. NetGears LLC,* FA 944807 (Nat. Arb. Forum May 16, 2007) (finding the respondent could not have registered or used the disputed domain name in bad faith where the respondent registered the disputed domain name before the complainant began using the mark).[6]

In spite of being warned by Defendant's counsel that its claims were frivolous, the Plaintiff nonetheless, thereafter, filed the Amended Complaint in this dispute, hoping the extortionary effect of the attorney fees which the Defendant would be forced to incur would result in the surrender of the Disputed Domain.  This Court should not tolerate this bad faith conduct.  The Plaintiff should not have arbitrarily forced the Defendant to incur attorney fees responding to claims that are unsustainable.

---

[4] National Arbitration Forum, Hon. Karl V. Fink (Ret.)
<http://domains.adrforum.com/domains/decisions/1307578.htm> (accessed Dec. 2, 2010).

[5] WIPO Arbitration and Median Center, Clark V. Lackert
<http://www.wipo.int/amc/en/domains/decisions/html/2000/d2000-0174.html> (accessed Dec. 2, 2010).

[6] National Arbitration Forum, Hon. Neil A. Brown
<http://domains.adrforum.com/domains/decisions/944807.htm> (accessed Dec. 2, 2010).

### E.     The Plaintiff's Common Law Trademark Claim Must Fail.

The Plaintiff has alleged it had common law rights at a time it did not exist. The Plaintiff lacks standing. The Plaintiff did not incorporate until May 21, 2009, almost four months after the Disputed Domain was registered. If the Plaintiff is a successor-in-interest of Wheeler's and Demer's claims, those claims are consequently barred under Rule 13(a) of both the Federal Rules of Civil Procedure and Idaho Rules of Civil Procedure as they were not raised by Wheeler and Demer in the State Action.

The Mark is not a type of mark easily afforded common law protection,[7] and the Plaintiff has submitted no evidence of common law trademark rights, which can be established only through a showing of famousness or distinctiveness, secondary meaning, and extensive use; none of which are evidenced in the Amended Complaint, and all of which are chronologically impossible to show.

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face. *Ward v. Utah,* 321 F.3d 1263, 1266 (10th Cir.2003). Under this standard, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." The allegations must be enough that, if

---

[7] Marks are generally classified in categories of increasing distinctiveness: (1) generic (describes the type of product itself, for example, "Ice Cream" ice cream); (2) descriptive (literally describes the product or its attributes such as "Cold & Creamy" ice cream); (3) suggestive (connote qualities about the product without literally describing the qualities, such as "Blizzard" ice cream; (4) arbitrary (unexpected in the context of use, such as "Diesel" ice cream); or (5) fanciful (invoking imaginative images in the context of use, such as "Home Run" ice cream") and (6) coined terms (words that are made up purposefully to be used as a mark, such as "Zerious" ice cream). *See Abercrombie & Fitch Co. v. Hunting World, Inc*., 537 F. 2d 4, 9 (CA2 1976). The last four categories of marks are deemed inherently distinctive and are entitled to protection. In contrast, generic marks [those that "refe[r] to the genus of which the particular product is a species," *Park' N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985), citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F. 2d 4, 9 (CA2 1976).

assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. *Cappetta v. GC Services Ltd. P'ship,* 654 F.Supp.2d 453, 456 (E.D.Va.2009) (citing *Burbach Broad. Co. v. Elkins Radio Corp.,* 278 F.3d 401, 405-06 (4th Cir.2002); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999)).

Even putting aside the issues of standing and waiver, the Plaintiff has submitted no evidence of common law trademark rights, which are not easily established. The Complaint offers no evidence supporting its assertions as required by *Ward, Cappetta and Edwards*. The panelists at the National Arbitration Forum (NAF) and World Intellectual Property Organization (WIPO), many of whom are retired federal judges, have developed an entire body of arbitrative common law in analyzing common law trademark and ACPA claims, all of which further compels dismissal of the Plaintiff's unsupported common law trademark claims.[8]

### F. Even Ignoring the Date of Registration, There is no Bad Faith Registration.

Even if the Court were to determine that the Plaintiff somehow has trademark rights when the Disputed Domain was registered, the Court would still have to determine that Defendant had a bad faith intent to profit from a registration it knew was in bad faith by analyzing many factors including nine that are outlined in the ACPA (15 U.S.C. § 1125(d)(1)(B)), none of which favor the Plaintiff:

(1) the registrant's trademark or other intellectual property rights in the domain name;
(2) whether the domain name contains the registrant's legal or common name;
(3) the registrant's prior use of the domain name in connection with the bona fide offering of goods or services;
(4) the registrant's bona fide noncommercial or fair use of the mark in a site

---

[8] *See Graman USA Inc. v. Shenzhen Graman Indus. Co*., FA 133676 (Nat. Arb. Forum January 16, 2003) (finding that general allegations of bad faith without supporting facts or specific examples do not supply a sufficient basis upon which the Panel may conclude that Respondent acted in bad faith); *see also Nike, Inc. v. Crystal International*, D2002-0352 (WIPO August 2, 2002) ("Assertions that any use of the Domain Name by another party would likely mislead or deceive the Complainant's customers, without evidence, is not of much use.").

6

           accessible by the domain name;
(5)    the registrant's intent to divert customers from the mark owner's online location that could harm the goodwill represented by the mark, for commercial gain or with the intent to tarnish or disparage the mark;
(6)    the registrant's offer to transfer, sell, or otherwise assign the domain name to the mark owner or a third party for financial gain, without having used the mark in a legitimate site;
(7)    the registrant's providing misleading false contact information when applying for registration of the domain name;
(8)    the registrant's registration or acquisition of multiple domain names that are identical or confusingly similar to marks of others; and
(9)    the extent to which the mark in the domain is distinctive or famous.

In the present case, none of these factors favor Plaintiff, and all favor Defendants' good-faith registration of the Disputed Domain, as the Plaintiff was using the Mark KRAZY COUPON LADY at the time of registration of the Disputed Domain and had been for a period of time. Irish Affid. ¶ 3.

### G. The Plaintiff's Claims for Unfair Competition Should Be Dismissed.

The Plaintiff's three claims for unfair competition should be dismissed for failure to state a claim upon which relief can be granted. The Plaintiff recasts the same facts styled as a claims for relief for unfair competition, all of which are claims that primarily arises in the context of palming off and misappropriation of goodwill, both of which "involve situations in which a company attempts to profit from the reputation of its competitor by selling one of its own products as that of its competitor or misappropriating a trademark belonging to its competitor." *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1279-80 (10th Cir. 2000). There is no allegation of palming off here, and to the extent that this claim is duplicative of the numerous meritless claims by the Plaintiff sounding in trademark, it should be dismissed both as duplicative and on the substantive grounds set forth above.

### IV.    CONCLUSION

For the foregoing reasons, pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Tamra Irish respectfully requests that this action be dismissed for failure to state a claim upon relief can be granted, and that this Court find the Plaintiff has engaged in reverse domain name hijacking.

## V. REQUEST FOR ATTORNEY FEES

The Section of the ACPA invoked by the Plaintiff against the Defendant to this action, Section 1129(2), provides:

> In any civil action brought under paragraph (1), a court may award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff. **The court may also, in its discretion, award costs and attorneys fees to the prevailing party.**

Because of the frivolous nature of the claims made in the Amended Complaint, the Defendant requests the Court award attorney fees spent defending against this action. The Plaintiff was asked to withdraw the Complaint at the risk that the Plaintiff would be forced to bear the cost of the Defendant's attorney fees. It would be unjust to force the Defendant, who is not financially well-off, to bear the burden of responding to a frivolous a ACPA claim, particularly where the US Congress enacted the ACPA with an express provision encouraging the Court to award attorney fees in ACPA cases. *Qvae nocent, saepe docent.*[9]

DATED and SIGNED this _8_ day of December, 2010.

/s/ _____
STEVEN L. RINEHART
*Attorney for the Defendant Tamra Irish*

---

[9] Latin: What hurts also instructs.

8

# CERTIFICATE OF SERVICE

I hereby certify that on this  _8_  day of December, 2010, a true and correct copy of the foregoing DEFENDANT'S MOTION TO DISMISS was served electronically via the CM/ECF system on the following person(s) indicated below:

| | |
|---|---|
| Michael Christian<br>MARCUS CHRISTIAN & HARDEE<br>737 North 7th Street<br>Boise, ID 83702<br>(208) 342-3563 | \_\_\_\_\_ US Mail, Postage Prepaid<br><br>\_\_\_\_\_ Facsimile<br><br>\_\_\_\_\_ Hand-Delivery<br><br>\_\_\_\_\_ Federal Express<br><br>__X__ Electronically via CM/ECF |

DATED and SIGNED this  _8_  day of December, 2010.

/Steven Rinehart_____
Steven Rinehart