**Michael Christian, ISB No. 4311**
**MARCUS, CHRISTIAN & HARDEE, LLP**
Attorneys at Law
737 North 7th Street
Boise, Idaho  83702
Telephone:    (208) 342-3563
Telefax:       (208) 342-2170
Email:  mchristian@mch-lawyer.com

Attorneys for Plaintiff *KRAZY COUPON LADY*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| _____ | ) | |
| | ) | |
| KRAZY COUPON LADY, LLC, an | ) | |
| Idaho limited liability company, | ) | **CASE NO. 10-539-S-REB** |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION TO** |
| vs. | ) | **DISMISS** |
| | ) | |
| TAMRA IRISH, an individual | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | / | |

## I.     INTRODUCTION

Defendant Tamra Irish ("Irish") has filed what is styled as a motion to dismiss pursuant to Rule 12(b)(6).  However, the motion is supported by an affidavit from Irish which purports to contradict many of the allegations of the Complaint.  While paying lip service to the rule that for purposes of a motion to dismiss the allegations of the Complaint must be taken as true and all reasonable inferences from those allegations

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 1**

taken in favor of the plaintiff, Irish's memorandum in support of her motion then largely ignores those allegations, several of which contradict her arguments.  Irish's affidavit suffers from evidentiary defects.  Key factual assertions by Irish in support of her motion are conclusory and she relates the contents of documents not authenticated or attached to her affidavit.  The relevant assertions in Irish's affidavit are contradicted by affidavits filed by Plaintiff concurrently with this opposition.  In short, what is in reality a motion for summary judgment is supported by a deficient affidavit and is the subject of multiple genuine factual issues.

Stripped of its irrelevant facts and argument, Irish's memorandum appears to assert: (a) Irish began using the term "Crazy Coupon Lady" in commerce in early November 2008, and registered the krazycouponlady.com domain name in late January 2009; (b) Krazy Coupon Lady, LLC ("KCL") was not organized until March 2009; (c) KCL did not apply to register the longer phrase "Krazy Coupon Lady, Pick Another Checkout Lane Honey" until May 2009; (b) therefore, Irish has senior rights to the krazycouponlady.com domain name and service mark.

However, Irish's own affidavit does not support the conclusion that her single use of "Crazy Coupon Lady" in November 2008 was "in commerce" or "in connection with the bona fide offering of goods or services."  Additionally, as set forth in the Complaint and in the Demer Affidavit, the "Krazy Coupon Lady" blog (using the domain name "krazycouponlady.blogspot.com") was started by Joanie Demer, one of the principals of KCL, on November 12, 2008, before Irish registered the domain name which is now in dispute.  Also, KCL's principals purchased the "crazycouponlady.com" domain name, which had been in use in commerce well before Irish's post on her family

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 2**

blog.  Irish held the krazycouponlady.com domain name dormant until a dispute arose between her and the principals of KCL, and only in May or June 2009 began using it to forward traffic to her competing "Discount Queens" website.  Irish misconstrues KCL's trademark application, and its application to register the longer phrase has no impact on its common law rights arising from use of the "Krazy Coupon Lady" name since November 2008.    Under these circumstances, summary judgment for Irish should be denied.

## II.    APPLICABLE STANDARDS

As Irish acknowledges, in deciding a motion to dismiss under Rule 12(b)(6), the Court must take all of the allegations of the complaint as true and draw any inference from the those allegations in favor of the non-moving party.  In this case, Irish has virtually ignored the allegations of the Amended Complaint and does not take them as true.

In any event, by supporting her motion with her affidavit containing factual allegations beyond those in the pleadings, Irish has transformed her motion into one for summary judgment. Fed. R. Civ. P. 12(d).  In ruling on a motion for summary judgment, the Court may not weigh the evidence, but must draw all reasonable inferences from the facts in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An affidavit used to support a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(c)(4).  Summary judgment must be denied if the evidence reflects any genuine issue of material fact.  Fed. R. Civ. P. 56(a).  Prior to ruling

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 3**

on a motion for summary judgment, the Court should resolve any evidentiary objections that are material to its ruling.  See Sanchez v. Aerovias De Mexico, S.A. De C.V., 590 F.3d 1027, 1029 (9th Cir. 2010).

### III.    RELEVANT FACTS

The Affidavit of Joanie Demer in Support of Opposition to Defendants' Motion to Dismiss ("Demer Affidavit"), and the Affidavit of JungJin Lee in Support of Opposition to Defendants' Motion to Dismiss ("Lee Affidavit"), both of which are filed herewith, set forth the following facts:

1.      Irish did not start the "Krazy Coupon Lady" blog, Demer did. Demer registered an account with Blogger.com, and created the original content for the blog.  Demer maintained the blog after its creation on November 12, 2008.  While Irish and Demer had discussed at a church function the concept of starting a couponing blog – of which there were already dozens or more in existence at the time – they did not make an agreement to name and start the blog.  Demer had already created other blogs, and was already active in couponing.  Demer Affidavit, ¶ 3.

2.      Demer had used the term "crazy coupon lady" in discussions before Irish posted the term on her family blog.  Irish did not come up with the name for the blog, or "invite" Demer to use the name, and the two did not agree to change the name of the blog Demer started to "Krazy Coupon Lady."  Demer decided on the name herself, and when she found that the name "Crazy Coupon Lady" was already taken while creating the blog, she made the spelling change herself.  Demer Affidavit, ¶ 4.

3.      Irish's use of the term "crazy coupon lady" on her personal blog was not "in commerce" or "in connection with a bona fide offering of goods or services."

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 4**

She used the term one time, in a post to her blog on November 8, 2008, in a message to her friends and family who read her blog.  Demer Affidavit, ¶ 5, Ex. A.

4.      Irish was not a "principle" [sic] in the "Krazy Coupon Lady" blog in late November 2008.  Demer had started the blog, and allowed Irish to post content to it.  Demer also allowed another friend, Heather Wheeler, to post content to the blog.  Because they were friends and were the first to help Demer, she gave Irish and Wheeler administrative privileges for the blog and listed them as "founders" on the front page of the blog.  Irish then added Katie Givens as a contributor and administrator without asking Demer first.  Demer was not previously acquainted with Givens.  Because she wanted to maintain her friendship with Irish, Demer did not object or make Irish remove Givens, even though she had nothing to do with the creation or initial content of the blog.  Demer added the "founders" designation primarily because by that time several other friends and readers were posting content to the blog.  Demer Affidavit, ¶ 6.

5.      Demer and Irish did not have a partnership.  When the blog was started, they were not engaging in business, and were not sharing any revenues.  Only after Demer began putting ads on her blog on about December 20, 2008, using Google Adsense, did the subject of money come up and eventually result in a dispute.  Initially Demer told everyone that posted content to the blog (including many more people than just Irish and Givens) that she would use her ad revenues to pay for a party for all of the contributors.  Several of the authors that would have been included in the party were posting more content than Irish or Givens.   A party was held at another contributor's house on January 13, 2009.  Demer Affidavit, ¶ 7.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 5**

6.      Even after Demer began receiving ad revenue, and Givens and Irish began teaching couponing classes, the parties never shared any revenue, nor did they ever agree to share any revenue, despite Irish's and Givens' desire to do so.  The fact that Irish and Givens immediately wanted to share revenues equally, irrespective of the amount of effort they put into the blog, and the fact that Irish wanted to involve several family members in the running of various aspects of the blog, made Demer decide against forming a partnership from the beginning.  Demer allowed her friends to place ads on the blog because of their friendships.  Demer Affidavit, ¶¶ 8, 9.

7.      After Demer had allowed Givens and Wheeler to place ads on the blog, Givens' ads initially generated more revenue, and Demer did suggest that they swap space periodically to be fair.  However, there still was no agreement made to share revenues in any way.  Out of friendship, Demer had simply arranged the "real estate" on the blog in an attempt to give everyone a fair share of ad space, and when it didn't work, she had to adjust it.  Demer Affidavit, ¶ 10.

8.      Irish's assertion that Demer did not "reveal" in March 2009 the amount of revenue my ads were producing is inaccurate.  In fact, at that point Wheeler, Irish and Givens also had ads, and no one was accounting to anyone else regarding these ads.  Irish's ads were initially a complete copy of Demer's ads, and Demer had to change hers so they didn't appear identical on the blog.  Demer Affidavit, ¶ 11.

9.      Demer did not receive any actual payment on her Google Adsense account, through which her ads were placed on the blog, until March 26, 2010, because a minimum amount is required to accrue before Adsense pays out.  At that time she received about $138.00.  At that point Wheeler and Givens had conducted a couponing

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 6**

class together, but did not share any of the revenue from it with Irish or Demer, and Irish and Givens had taught a couponing class, and did not share the revenue from it with Wheeler or Demer.  Demer Affidavit, ¶ 12.

10.     After it became apparent that Heather Wheeler and Demer were providing the bulk of the content to the blog, and Irish and Givens nevertheless continued to press for an agreement to share revenues, Demer did post an offer to Irish and Given to pay them to be removed from the blog.  She did this in an attempt to be fair to Irish and Givens and not hurt their feelings in making it clear that she and Wheeler did not want to continue with them involved in the blog.  Demer reiterated in the post and later that date to Irish that she did not view the blog as a partnership.  Demer Affidavit, ¶ 13, Ex. B.

11.     Irish's characterization of the parties' relationship as "strained and sometimes antagonistic" leaves out key details.  In fact, in response to Demer's offer, Irish immediately stripped the blog of all of its customized graphical content (which had taken Demer over 60 hours of work to create) and removed Wheeler's and Demer's administrative and author privileges, effectively locking them out of the blog.  Only after Demer and Wheeler indicated that they would seek legal recourse if necessary did Irish restore their administrative and author rights.  Demer Affidavit, ¶ 14.

12.     Shortly thereafter on the same day, Irish removed herself as an administrator on the blog, and Givens later asked to be removed.  After March 26, 2009, neither Irish nor Givens ever contributed to the Krazy Coupon Lady blog again in any way.  Demer Affidavit, ¶ 15.

13.     On March 29, 2009, Irish emailed Demer to say that she did not want any money from Demer, and that the blog "was never about the money" to her. Demer Affidavit, ¶ 16, Ex. C.

14.     Also on about March 29, 2009, i.e., within three days after defacing Krazy Coupon Lady site and and removing herself from it, Irish brought her competing "Discount Queens" website online, at discountqueens.blogspot.com.    It engages in essentially the same business as KCL's site, i.e., it provides couponing information and contains ads from which it derives revenue, although KCL's site has significant additional content at this point, and Wheeler and Demer have done substantial work to build up a following through national media appearances and a book they authored.   Irish has operated the Discount Queens site continuously since March 29, 2009, and has had no further involvement in the Krazy Coupon Lady site.   Irish and Givens solicited most of the contributing authors to KCL's site to move to Discount Queens, and several of them did.   Irish does not reveal or share with Wheeler or Demer what revenue the Discount Queens site generates.   Demer Affidavit, ¶ 17.

15.     Demer and Wheeler discovered on about May 30, 2009 that Irish had caused the krazycouponlady.com domain name to forward traffic to Irish's Discount Queens website.   She had never caused it to forward traffic to the Krazy Coupon Lady site.   The krazycouponlady.com domain name continues to forward to the Discount Queens website today.   Demer Affidavit, ¶ 18.

16.     Wheeler and Demer are the only two members of KCL, and we have contributed our interest in the Krazy Coupon Lady site, and any intellectual property rights associated with it, to the LLC.   They authored a book, *Pick Another Checkout*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 8**

*Lane, Honey*, on which they listed their present domain name, thekrazycouponlady.com, and which they market through KCL.  Demer Affidavit, ¶ 19.

18.     On the date that Irish registered the krazycouponlady.com domain name, the Krazy Coupon Lady blog was receiving about 150-200 hits per day.  By the time Wheeler and Demer found Irish was causing the krazycouponlady.com domain name to forward to her competing Discount Queens website, in late May 2009, the Krazy Coupon Lady site was receiving about 4,000 hits per day.  Through Demer's and Wheeler's national media appearances and book, they have increased traffic to KCL's site significantly since then.   Demer Affidavit, ¶ 21.

19.     Irish's site has obviously benefited from any increase of traffic to KCL's site, since unwitting users entering the krazycouponlady.com domain name will be directed to the Discount Queens website, not the Krazy Coupon Lady website. During one media story the KCL site was mentioned, but not the spelling, and Demer and Wheeler found that the site with the domain name crazycouponlady.com received a large spike in traffic.  KCL subsequently purchased that domain name and the site is no longer in existence.  The crazycouponlady.com domain name now forwards to KCL's site. Demer Affidavit, ¶ 22.

20.     The crazycouponlady.com domain name was initially registered to Amber Shelton, from whom KCL purchased the domain name rights, in 2007.  Shelton's

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 9**

website using the domain name was in existence, engaged in the business of selling videos about couponing, before the Krazy Coupon Lady blog was created.  This is one of the reasons Demer changed the spelling when she created the blog.  Demer Affidavit, ¶ 23.

21.     KLC originally filed its trademark application itself as a "1(a)" application, indicating use of the mark to be registered.  It then hired Lee's law firm to assist it with the application.  Lee Affidavit, ¶ 3.

22.     Because Lee's firm concluded that it could not support the claimed use date for the exact phrase for which KCL was seeking registration, "Krazy Coupon Lady, Pick Another Checkout Lane Honey," it amended the application in March 2010 to "1(b)," or "intent to use" application.  Lee Affidavit, ¶ 4.

23.     Irish's assertion that, by virtue of its present status as a "1(b)" applicant, KCL cannot claim to have used any portion of the mark to be registered prior to the original application date of May 21, 2009 is incorrect.  In fact, any portion of the mark to be registered could have been in use prior to the application date, and KCL could have common law rights associated with that use.  Lee's firm merely decided to change the application to support a use date that it knew to be a defensible for the entire phrase included in the mark for registration purposes.  The date of application for registration of the entire phrase would not affect common law rights arising from any earlier use of any portion of the mark.   Lee Affidavit, ¶ 5.   As discussed above, KCL's principals were using the "Krazy Coupon Lady" name from the time Demer created the blog in November 2008.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 10**

## IV.   ARGUMENT AND AUTHORITY

### A.   Irish's Affidavit suffers from several evidentiary defects.

Irish's affidavit is objectionable as follows:

1.     All of Irish's references to the contents of documents not authenticated and attached as exhibits are hearsay and not best evidence.  F.R.E.  801, 1002.  These references exist in paragraphs 4 (business name filing, email and newspaper article), 7 (blog post), and 11 (trademark application).

2.     Irish's statement that she had begun to use the phrase "crazy coupon lady" in commerce, in paragraph 2 and paragraph 9, are unsupported by any factual detail and are conclusory and self-serving.   Fed. R. Civ. P. 56(c)(2), (4).

3.     Irish's statement that she and others had an "ongoing partnership" in paragraph 3 of her affidavit, is unsupported by any factual detail and is conclusory and self-serving.  Fed. R. Civ. P. 56(c)(2), (4).

### B.   Irish's use of the term "Crazy Coupon Lady" on her family blog is not use in commerce or in connection with a bona fide sale of goods or services.

Irish's motion is based in part on the assertion that she obtained trademark rights in the disputed domain name by virtue of having used the phrase "crazy coupon lady" in a post on her personal blog.  However, Irish could obtain common law trademark rights in the phrase only if she first used it "in commerce."   The Lanham Act defines "use in commerce" as follows:

> The term "use in commerce" means the bona fide use of a
> mark in the ordinary course of trade, and not made merely

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 11**

to reserve a right in a mark. For purposes of this Act, a mark shall be deemed to be in use in commerce—

(1) on goods when—

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.   Also, use must be "deliberate and continuous, not sporadic, casual, or transitory." La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271-72 (2d Cir. 1974); Int'l Health Care Exchange, Inc. v. Global Healthcare Exchange, LLC, 470 F. Supp. 2d 365, 370-371 (S.D.N.Y. 2007) (quoting La Societe Anonyme).

Irish makes the conclusory assertion that she has used the term "Crazy Coupon Lady" in commerce but provides no evidence whatsoever to support the assertion.   The single family blog post in which she used the phrase, upon review, contains evidence of none of the above requirements.   Her single use of the phrase in a personal blog does not support her motion.

          C.      **There is sufficient evidence to support a finding that Irish's registration or use of the disputed domain name is in bad faith.**

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 12**

The Anti-Cyberpiracy Prevention Act ("ACPA"), 15 U.S.C. § 1125(d), provides that a "person shall be liable in a civil action by the owner of a mark . . .if, without regard to the goods or services of the parties, that person":

> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that—
>
>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>>
>> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>>
>> (III) is a trademark, word, or name protected by reason of section 706 of title 18, United States Code, or section 220506 of title 36, United States Code.

There is no question that the domain name registered and used by Irish is "identical or confusingly similar to" the name of KCL's site, "Krazy Coupon Lady." In determining whether a domain name registrant acted in bad faith, the court may consider the following non-exclusive factors:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 13**

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).

KCL has presented evidence satisfying several of the factors establishing that Irish's use of the krazycouponlady.com domain name has been, and continues to be, in bad faith:

1.    Irish has no trademark rights in the krazycouponlady.com domain name.  Her sole assertion in support of a contrary conclusion is that she used the phrase

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 14**

"Crazy Coupon Lady" once in November 2008 in a post on what she describes as her "personal computer blog."  Irish Affidavit, ¶ 2.  Based on this fact she makes the conclusory assertion that she used the phrase "in commerce."  However, Irish does not explain what the purpose of either the personal blog or the post were, and sets forth no facts whatsoever from which to conclude that she used the phrase "in commerce" or "in connection with a bona fide offer of goods or services."  A review of the blog post itself, attached as an exhibit to the Demer Affidavit, shows that it has no connection with commerce or the bona fide offering of goods or services, but is simply a report of her personal shopping experience to friends and family.

2.      The krazycouponlady.com domain name does not consist of Irish's legal name or identify her.

3.      Irish has not used krazycouponlady.com domain name for bona fide noncommercial fair purposes or for "fair use" within the definition of 15 U.S.C. § 1125(d)(1)(B)(i)(IV).  The only use she has ever put the domain name to divert traffic to her competing Discount Queens site.[1]

4.      Irish offered to sell the domain name to KCL and its principals without having used, or having an intent to use, the domain name in a bona fide offering of goods or services.

5.      The only possible inference to draw from Irish's causing a domain name identical to that of KCL's website to forward traffic to her own competing Discount Queens website is that her intent in using the domain name was to divert KCL's

---

[1]      For this reason, the date of registration by Irish of the disputed domain name is irrelevant, except for determining whether KCL's mark was distinctive or famous at the time of registration, although Irish does not appear to raise this issue, only arguing that KCL was not organized at the time Irish registered the domain name.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 15**

customers to her own website, profit from the fame and distinctiveness of KCL's webiite, and harm the goodwill of KCL, within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(V).

While it is difficult to parse, Irish's motion does not appear to challenge whether KCL's mark is "distinctive" except to the extent she argues that she registered the disputed domain name before KCL was organized (which is irrelevant, where there is ample evidence that the "Krazy Coupon Lady" name was in use in commerce before the domain name was registered).[2]  Nevertheless, whether a mark is generic or distinctive is an issue of fact.  Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 929 (9th Cir. 2005).  Marks are generally classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992). Which category a mark belongs in is a question of fact.  Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1195-96 (9th Cir. 2009). Suggestive, arbitrary, and fanciful marks are considered "inherently distinctive" and are automatically entitled to federal trademark protection because "their intrinsic nature serves to identify a particular source of a product." Two Pesos, 505 U.S. at 768. A suggestive mark may be protected without a showing of secondary meaning.  A term is suggestive if "imagination" or a "mental leap" is required in order to reach a conclusion as to the nature of the product being referenced.  Id.; Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 911 (9th Cir. 1995).  A suggestive mark is one for which "a consumer must use imagination or any type of multistage reasoning to understand the

---

[2]     A trade name may be assigned along with its goodwill, which is what occurred from Demer and Wheeler to their entity, KCL.  KCL also effectively acquired the goodwill of of the former owner of crazycouponlady.com, as her site was shuttered when KCL purchased the domain name and traffic immediately began to forward to KCL's couponing site.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 16**

mark's significance." <u>Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery</u>, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998).

Deciding whether a mark is suggestive or merely descriptive "is far from an exact science and is a tricky business at best." <u>Lahoti</u>, 586 F.3d at 1197 (quotation marks omitted).   The Ninth Circuit has used both the "imagination test" and the "competitors' needs test" in analyzing whether a mark is descriptive or suggestive. <u>Rudolph Int'l, Inc. v. Realys, Inc.</u>, 482 F.3d 1195, 1198 (9th Cir. 2007); <u>Rodeo Collection, Ltd. v. W. Seventh</u>, 812 F.2d 1215, 1218 (9th Cir. 1987).

The imagination test asks whether "imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced." <u>Rudolph Int'l, Inc.</u>, <u>supra</u>.   "If the mental leap between the word and the product's attribute is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." 1 McCarthy § 11.21[1], at 11-108 to -109 (citing <u>Investacorp, Inc. v. Arabian Inv. Banking Corp.</u>, 931 F.2d 1519 (11th Cir. 1991)).   Here, "Krazy Coupon Lady" does not provoke an instantaneous idea regarding the services or goods that KCL's site offers, beyond the fact that they involve the subject of coupons.

The competitors' needs test focuses on the extent to which competitors must use the mark to identify their goods or services.  If competitors have a great need to use a mark, the mark is more likely descriptive; on the other hand, if the suggestion made by the mark is so remote and subtle that it is not likely to be needed by competitors to describe their goods or services, this indicates that the mark is merely suggestive. <u>Rodeo Collection, Ltd.</u>, <u>supra</u>.  The competitors' needs  test is related to the imagination test; the more imagination that is required to associate a mark with a product or service, the less

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 17**

likely the words used will be needed by competitors to describe their products or services. *Id*.

The "Krazy Coupon Lady" name, as a whole, is suggestive; while the work "Coupon" in the name by itself is descriptive of coupons generally, it is not descriptive of the services and goods offered by KCL through its site, beyond their connection to the subject of coupons. The additional words "Krazy" and "Lady" are entirely non-descriptive in relation to the subject of coupons or couponing. Competitors would not need to use the mark, as a whole, to describe their goods or services. Indeed, they would not necessarily need to use the word "Coupon"; Irish's own "Discount Queens" site name is an illustration of this fact. At worst, the court cannot rule as a matter of law that KCL's mark is not distinctive.

### D.    KCL's common law unfair competition claim is sufficiently supported.

Irish summarily asserts that an unfair competition claim is only viable in the case of "palming off" of goods, and that to the extent KCL's statutory and common law unfair competition claims are "duplicative of" KCL's other claims, they should be dismissed.[3]   Irish does not explain this assertion.

The Idaho Competition Act provides, at I.C. § 48-104:  "A contract, combination, or conspiracy between two (2) or more persons in unreasonable restraint of Idaho commerce is unlawful."

In addition, the Idaho Supreme Court has adopted the Restatement definition of common law unfair competition:

---

[3]    Irish incorrectly asserts that KCL has alleged three unfair competition claims, rather than two, one under the Idaho Competition Act and one for common law unfair competition.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 18**

> The Restatement (Third) of Unfair Competition § 4 provides that one is subject to liability if:
>
> [I]n connection with the marketing of goods or services, the actor makes a representation likely to deceive or mislead prospective purchasers by causing the mistaken belief that the actor's business is the business of the other, or that the actor is the agent, affiliate, or associate of the other, or that the goods or services that the actor markets are produced, sponsored, or approved by the other.

Wesco Autobody Supply, Inc. v. Ernest, 2010 Ida. LEXIS 18 (November 24, 2010).

KCL has presented evidence that: (a) Irish did not register the disputed domain name until after KCL's principal started the Krazy Coupon Lady blog, which is now the Krazy Coupon Lady website; (b) Irish never caused the disputed domain name to forward to the Krazy Coupon Lady blog; (c) Irish created a directly competing couponing website, Discount Queens, following her dispute with the principals of KCL; (d) Irish has only used the disputed domain name to forward traffic to her Discount Queens site; and (e) the disputed domain name, krazycouponlady.com, is identical to the name of KCL's website, creating obvious confusion to consumers as to whether the Discount Queens website is "the business of" KCL, is the "agent, affiliate or associate of" KCL, or that the Discount Queens website is "sponsored, or approved by" KCL.  This evidence supports a claim for both common law and statutory unfair competition.

## V.    CONCLUSION

Irish's motion is incorrectly styled as a motion to dismiss.  Her affidavit is contradicted in all material respects both by the Complaint and by the Demer and Lee Affidavits.  Irish's affidavit fails to establish that she used the term "Crazy Coupon Lady" in commerce.  She has never used the disputed domain name in commerce other than to

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 19**

forward traffic to her competing website, after Plaintiff's principals established the "Krazy Coupon Lady" blog and it engaged in commerce.  Irish's use of the disputed domain name to forward traffic to her own competing website is clear evidence of bad faith.  Irish's motion should be denied.

DATED this 6th day of January, 2011.

MARCUS, CHRISTIAN & HARDEE, LLP

/s/_____
                    Michael Christian
                    Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January, 2011, I electronically filed the foregoing in the above-referenced matter with the Clerk of the Court using the CM/ECF system which sent the Notice of Electronic Filing to the following persons:

William C. Tharp
Local Counsel
*btharp@greenerlaw.com*
Greener Burke Shoemaker PA
950 West Bannock Street, Suite 900
Boise, Idaho  83702
Telephone: (208)319-2600
Facsimile:  (208)319-2601

Steven L. Rinehart
Attorney *Pro Hac Vice*
50 West Broadway, Suite 1200
Salt Lake City, UT   84101
Telephone: (801)328-0266

/s/Michael Christian

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 20**